I2DALEY, Judge.
Plaintiff Vernon Peden was awarded damages for injuries he suffered in an automobile accident on January 10, 1995. Defendant USAA Property & Casualty Insurance appeals this judgment, arguing that the trial court’s factual finding that Peden suffered a nine month soft tissue injury was clearly wrong. Additionally, USAA argues that the trial court failed to find that an intervening accident caused Peden’s injuries. Plaintiff filed an answer to the appeal, alleging that the damage award was inadequate. We affirm.
Peden was a passenger in a Ford Escort that rear-ended a Ford truck on Airline Highway at Fairway Drive in Jefferson Parish. The impact caused him to strike his head on the windshield. He was wearing his seat belt and the impact did not cause him to lose consciousness, although it did cause a starburst break in the glass. Peden had a history of trauma induced epilepsy, caused by a 1986 comminuted skull fracture 13th at required surgery. He is required to take Dilantin, an anti-convulsant medication, three times per day to prevent seizures. In this suit, he alleged that the accident caused a nine month injury to his neck and back, increased frequency of seizures, and a year of lost wages. Following a bench trial on damages only, the trial court awarded him damages of $17,940.31, consisting of $13,500 for pain and suffering, $2,400 for six months lost wages, and $2000.31 for past medical expenses. USAA filed a Motion for Appeal.
Peden testified that he was in the accident on January 10, 1995, and that he hurt his neck, head, and back. He described striking the windshield with his head, but not losing consciousness. He got out of the car and waited for the ambulance to take him to Charity, where he was examined.
Peden testified that he developed epileptic seizures in 1987 or 1988 following the fractured skull in 1986. He said that he always took his Dilantin, 100 milligrams three times per day. He denied using alcohol in excess, and he denied using cocaine or any other illegal drug for the time period between January, 199§, and September, 1995. Peden said that his doctors told him he could drink as long as he took his Dilantin.
The Charity Hospital medical records show that on January 10, 1995, Peden was examined at Charity Hospital following the accident. He reported the history of striking his head on the windshield. The records show neck, back, and shoulder injury. Peden next visited Charity on February 8, 1995 complaining of flank pain. A blood test showed a Dilantin level of 0, indicating that Peden had not taken any Dilantin. Peden again visited Charity on February 28, 1995, complaining of seizure. His next visit was March 11, 1995, when he was treated for alcohol abuse. On May 8, 1995, he was seen in the Charity emergency room for a grand mal seizure. His |4bIood showed a Dilantin level of 4.1. The blood test was also positive for alcohol and cocaine. Peden was seen again on July 29, 1995 for head and neck pain, and blurred vision. Finally, a record of a January 19, 1996 visit to Charity showed a blood Dilantin level of 0.
Dr. Ivan Brinkman, a general surgeon with American Medical Group who examined plaintiff on March 15, 1995, testified first. He stated that plaintiff related a history of a January 10, 1995 automobile accident and had records of his treatment at Charity Hospital. The records and examination showed cervical and lumbrosacral sprain. Dr. Brink-man prescribed muscle relaxants, pain medication, and physical therapy. He next saw the plaintiff on May 16, 1995. Examination findings were unchanged from the last visit. Dr. Brinkman had asked for x-rays and a neurological consult after the first appointment, but he did not get them.
Dr. Brinkman knew of plaintiffs history of epilepsy, and opined that this later head injury could have compounded the effects of *89 Peden’s 1986 head injury. He related plaintiffs current increase in seizures to the 1995 accident. On cross, Dr. Brinkman admitted that the 1995 accident was not the source of the seizures. He also admitted that he did not treat the plaintiff in any way for the seizures.
The doctor’s records show that plaintiff was discharged twice (April 28,1995 and July 5, 1995) for failure to return for follow up visits. He characterized these discharges as “administrative” rather than medical. The records show that plaintiff attended physical therapy sporadically, on March 15, May 17, 19, and 22, and on September 12,1995.
Intervening Accident
Defendant argues that plaintiff was in an intervening accident on March 10, |s1995. Plaintiff denied that he was in another accident. The record contains the police report from the January accident, but does not contain one from any other accident.
Dr. Brinkman’s records and letters of treatment summary to Peden’s attorney reveal a discrepancy in the date and place of the accident. The intake record lists the accident date as 3-15-95, and records it as having occurred in uptown New Orleans on Harmony Street. It lists the vehicles as a Ford Taurus and a Mercedes. It appears that the date has been whited out and written over.
The first letter[1] from Dr. Brinkman to Peden’s attorney, dated March 15, 1995, states that the accident occurred on January 10, 1995 at 1:30 p.m. in a Ford Escort on Airline Highway in Kenner. The second letter, also dated March 15, 1995, states that the accident occurred on January 10, 1995, at 6:20 p.m. between a Ford Escort and a Ford Tow Truck on “Airline Highway and Fairway Street Harmony Street in New Orleans”. The third letter, dated March 15, 1995, is substantially the same as the first one. The fourth letter, dated March 15, 1995, states that the accident occurred on January 10, 1995, at 1:30 p.m., between a Ford Taurus and a Ford 6000 on Harmony Street in New Orleans. The fifth letter, dated March 15, 1995, is substantially the same as the fourth letter. The sixth letter, dated March 15, 1995, states that the accident occurred on January 10, 1995, at 1:30 p.m., between a Ford Taurus and a Mercedes on Harmony Street in New Orleans. The seventh letter, dated March 15, 1995, states that the accident occurred on March 10,1995, at 1:30 p.m. between a Ford Taurus and a Mercedes on Harmony Street in New Orleans.
The eighth letter is dated October 26, 1995, and lists the accident as having occurred on March 10, 1995. The ninth letter is also dated October 26, 1995, and | (iIists the accident as having occurred on January 10, 1995.
Dr. Brinkman was asked to explain the discrepancies among these records and letters, and could not. He blamed some of it on the size of the medical group and that it had offices in eight locations across the city. He testified that he is no longer with this medical group.
Although Dr. Brinkman’s letter indicate that his records were in a state of disarray, there is no direct evidence that plaintiff was involved in an intervening accident on March 10, 1995. Defendant bases its belief in this accident on one intake record and the letters from Dr. Brinkman’s office, but has not shown any other evidence of an accident, such as a police report or a witness. The Charity Hospital records, which cover the time period when this second accident is alleged to have happened, do not reference a March accident. Defendant argues that plaintiffs statement that there was no March accident should be disregarded in light of his untruthful testimony about taking his Dilan-tin regularly and his use of alcohol and cocaine. However, we cannot say the trial court was clearly wrong in its evaluation of the evidence that only one accident occurred on January 10,1995.
Duration of Soft Tissue Injury
In the alternative, the defendant argues that the medical records, combined with plaintiffs sporadic attendance at physical therapy, do not support the trial court’s conclusion that Peden suffered a nine month soft tissue injury. The record shows that Pe- *90 den’s accident was on January 10, 1995, and he attended physical therapy in March, May, and the last visit was September 12, 1995. Plaintiff testified that he was in pain during this nine month time period and couldn’t work. When he couldn’t work, he lost his apartment and was homeless for a time until he moved in with his 17mother. He testified that he did not always have bus fare to get to physical therapy, nor could he always get rides.
Considering that plaintiffs last visit to physical therapy was approximately nine months after the accident, we find that the trial court was not clearly wrong in determining that the plaintiff suffered a nine month soft tissue injury.
Answer to Appeal — Increase in Seizures
Defense witness Dr. William Martin, a neurologist, testified that he reviewed the plaintiffs medical records from Charity Hospital, but did not examine the plaintiff. He stated that a person diagnosed with epilepsy would need to remain on an anti-convulsant drug, such as Dilantin, for life. He also testified that Dilantin is successful in controlling seizures in about eighty percent of patients. Plaintiffs medical records gave a history of approximately three to four grand mal seizures per year. Dr. Martin stated that the therapeutic range of Dilantin is 10-20. Plaintiffs medical records showed twice where he had zero levels of Dilantin in his blood (February 8, 1995, and January 19, 1996), and once a level of 4.1 (May 8, 1995), which indicated to Dr. Martin that plaintiff was not taking the Dilantin as prescribed. Dr. Martin testified that plaintiffs failure to take the Dilantin as prescribed would increase the likelihood he would have seizures, as would the plaintiffs use of alcohol and cocaine. The doctor testified that both alcohol and cocaine are brain irritants and increase the likelihood of seizures, and that epilepsy patients are advised not to use either substance. Dr. Martin opined that plaintiffs increase in seizures were more likely than not caused by his irregular use of the Dilantin, in combination with his use of alcohol and cocaine, rather than the January 10,1995 accident.
Defendant argues that plaintiff did not prove that any increase in seizures was | smore likely than not related to the January 10, 1995 accident, and that it is more likely the seizures are a result of his failure to take his Dilantin as prescribed, and his use of alcohol and cocaine. Defendant points out that plaintiffs medical records, which showed three occasions when his Dilantin levels were either zero or below therapeutic range, impeached his testimony that he always took his Dilantin as prescribed. The medical records also impeached plaintiffs testimony that he did not use any illegal drugs (cocaine) during the time he had the soft tissue injury.
We conclude that the trial court’s failure to award plaintiff additional damages for increase in seizures is not manifestly erroneous, as the evidence shows that if there was an increase in seizures, it was most likely caused by the plaintiffs failure to take his Dilantin as prescribed and his use of alcohol and/or cocaine.
The trial court’s judgment is affirmed. Each party is to bear its own costs of this appeal.
AFFIRMED.

. Found in Volume 1.